UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

                    Plaintiff,

         -against-                        <u>MEMORANDUM & ORDER</u>
                                          19-CR-0530 (JS)
JOAQUIN CARMONA GONZALEZ,

                    Defendant.
---------------------------------X
APPEARANCES
For Plaintiff:            Charles N. Rose, Esq.
                         Assistant U.S. Attorney
                         United States Attorney, E.D.N.Y.
                         610 Federal Plaza
                         Central Islip, New York 11722

For Defendant:           Christopher Worth, Esq.
                         429 Montauk Highway
                         P.O. Box 1115
                         East Quogue, New York 11942

                         Mark I. Cohen, Esq.
                         Cohen Frankel & Ruggiero, LLP
                         20 Vesey Street, Suite 1200
                         New York, New York 10007


SEYBERT, District Judge:

         Defendant Joaquin Carmona Gonzalez ("Defendant") seeks

to dismiss the Government's one-count indictment alleging

Defendant illegally reentered the Country in violation of 8 U.S.C.

§ 1326(a) & (b)(1) (hereafter, the "Dismissal Motion").  (See ECF

No. 21; <u>see also</u> Supp. Memo., ECF No. 21-1; Supp. Exs. A–z, ECF

Nos. 21-3 through 21-28, respectively; Reply, ECF No. 34.)  The

Government opposes the Dismissal Motion, arguing primarily that

Defendant's collateral attack of the underlying removal order does not establish fundamental unfairness in the process of his removal. (See Opp'n, ECF No. 31; see also Supp. Exs. A-O,[1] ECF No. 32 (under seal).)  For the reasons stated herein, the Dismissal Motion is DENIED.

<u>BACKGROUND</u>

Defendant is a Mexican citizen.  (See Ex. C, ECF No. 21-5.)  He entered the United States in February 2002 on a B1/B2 tourist visa.  (See Ex. G-B, ECF No. 32, p.2.)  On April 12, 2003, Defendant was arrested in Sag Harbor, New York and charged with, among other things, driving while intoxicated, pursuant to NY VTL § 1192(3), a Class U Misdemeanor.  On September 11, 2003, he pled guilty to driving while ability impaired by the consumption of alcohol, in violation of NY VTL § 1192(1), an infraction, and was sentenced to pay a fine.  (See Ex. G-A, ECF No. 32, p.1.)

Despite no record of it, Defendant must have left the United States sometime after his 2003 guilty plea, since, on January 25, 2007, he reentered the Country from Mexico on a B1/B2 tourist visa (hereafter, the "January 2007 Reentry").  (See Ex. B., Form I-275 (Withdrawal of Application of Admission), ECF No.

---

[1]  The Government's exhibits are filed under seal as one document and lettered "A" through "O".  To avoid confusion with the Defendant's lettered exhibits, the Government's exhibits will be identified as "Ex. G-[letter]".

21-4.)  The January 2007 Reentry was via a flight into Las Vegas, Nevada.  (See id.)

Again, Defendant must have left the Country sometime after his January 2007 Reentry because, on March 26, 2007, he reentered the United States by a flight from Mexico into Houston, Texas (hereafter, the "March 26 Reentry").  (See id.; see also Ex. A, Gonzalez Aff., ECF No. 21-3, ¶9.)  Initial screening at the Houston airport by Customs and Border Protection personnel ("CBP") indicated Defendant recently traveled to the United States, i.e., the January 2007 Reentry, which triggered Defendant's referral for a secondary interview.  (See Ex. B; see also Ex. A, ¶¶10-11.)

During the secondary interview, despite initially being untruthful about his prior visit (e.g., its duration; where he stayed; whether he was employed in the United States during the visit), Defendant ultimately admitted having worked in New York during that visit.  (See Exs. B & C.)  Defendant, who admitted to speaking both Spanish and English, was then advised of his limited rights, which rights were provided to him in Spanish and English. (See Exs. A, C, & E, Record of Sworn Statement (Jurat) in Spanish, ECF No. 21-7.)  In a sworn statement, Defendant admitted, inter alia:  he was a Mexican citizen with no claim to United States citizenship; that between his January 2007 Reentry and the March 26 Reentry, he had lived on Long Island, and worked in landscaping and construction without documentation permitting him to do so;

3

that the purpose of his March 26 Reentry was to look for work in the United States; he did not have a return ticket to Mexico; and, he did not wish to contact the Mexican Consulate, fear returning to Mexico, or have any questions.  (See Ex. C; see also Ex. D, ECF No. 21-6.)  Defendant also admitted to understanding his rights.  (See Ex. C.)  However, Defendant was not truthful in stating that he had never been arrested anywhere in the world.  (See id. at 2.)

Thereafter, Defendant was determined to be inadmissible pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), i.e., having worked without authorization on his last entry into the Country, and to be subject to expedited removal proceedings; accordingly, a Notice and Order of Expedited Removal, which contained the "Determination of Inadmissibility" and "Order of Removal," was executed and served upon Defendant.  (See Ex. F, Form I-860, ECF No. 21-8 (including Certificate of Service).)  In conjunction with the Notice and Order of Expedited Removal, Defendant was: given notice that he was "prohibited from entering, attempting to enter, or being in the United States for a period of 5 years from [March 26, 2007] as a consequence of . . . having been found inadmissible as an arriving alien . . . ;" instructed that if he wished to reenter the United States within the 5-year bar period, he was required to "obtain permission from the Attorney General to reapply for admission;" and, warned "that it is a crime for an alien who has been removed from the United

4

States to enter, attempt to enter, or be found in the United States without the Attorney General's express consent," subjecting said alien "to prosecution for a felony" and potential imprisonment and/or a fine.  (See Ex. G, Form I-296, ECF No. 21-9.)  Defendant was removed from the United States on March 26, 2007 by a flight out of the Houston airport.  (See id. at Verification of Removal (including Defendant's picture, right index fingerprint and signature).)

On March 30, 2007, Defendant was apprehended inside the United States near the Naco, Arizona Port of Entry (hereafter, the "March 30 Reentry").  (See Ex. K, Form I-213, ECF No. 21-13.) Lacking valid immigration documents permitting his presence in the Country, Defendant was taken to a Border Patrol Processing Facility for further processing.  (See id.)  Once there, initial processing highlighted Defendant's prior criminal and immigration records, thereby subjecting him to secondary processing.  (See id.)  During this secondary processing, Defendant was informed in both Spanish and English of his rights; thereafter, he agreed to speak with a Border Patrol agent under oath.  (See Ex. M, Form I-867A, ECF No. 21-15; Ex. N, Form I-867B, ECF Nos. 21-16.)  Defendant admitted he: was a Mexican citizen with no legal status in the United States; did not have a valid immigration visa permitting his travel to the Country; was apprehended approximately four kilometers inside the U.S. border about two hours after crossing the border

in the desert; entered the United States to find work, with plans to stay for approximately one year; did not fear returning to Mexico; and, would not be harmed if he was returned to Mexico. (See Ex. M.)  Thereafter, Defendant was determined to be eligible for expedited removal since he was found to be a Mexican citizen within the United States, within 100 air miles of the U.S./Mexican border, but without having been properly admitted, i.e., lacking valid immigration documents, and to not have been physically present in the Country continuously for a 14-day period immediately prior to his March 30, 2007 encounter with Border Patrol agents. Accordingly, a Notice and Order of Expedited Removal was issued, which included a determination of inadmissibility.  (See Ex. O, Form I-860, ECF No. 21-17, at Determination of Inadmissibility (finding Defendant inadmissible pursuant to INA § 212(a)(7)(A)(i)(I)); see also Ex. M.)  In conjunction with the March 30, 2007 Notice and Order of Expedited Removal served upon Defendant (see Ex. O, Certificate of Service), a corresponding Notice to Alien Ordered Removed/Departure Verification Form was executed and provided to Defendant.  (See Ex. P, Form I-296, ECF No. 21-18 (including Defendant's picture, right index fingerprint and signature).)  Similar to the one issued on March 26, 2007, this Notice and Departure Verification Form: notified Defendant that he was "prohibited from entering, attempting to enter, or being in the United States" but for a period of 20 years because

6

he had "been found inadmissible and . . . having been previously excluded, deported, or removed from the United States"; instructed Defendant that he was required to "obtain permission from the Attorney General to reapply for admission" if he wished reentry within the 20-year bar period; and, warned "that it is a crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Attorney General's express consent," subjecting him to felony prosecution, potential imprisonment, and/or a fine.  (See id.) Defendant was allowed to return to Mexico on foot.  (See id. at Verification of Removal (including Defendant's picture, right index fingerprint and signature).)

Undeterred, on April 10, 2007, Defendant illegally reentered the United States, crossing the U.S./Mexico border near Santa Teresa, New Mexico, without valid immigration documentation. (See Ex. Q, Form I-213 (Report of Deportable/Inadmissible Alien), ECF No. 21-19.)  That same day, he was arrested by a Border Patrol agent and taken to the Santa Teresa Border Patrol station for processing.  (See id.)  Initial processing of Defendant revealed, inter alia, his "previous Removal on 03/26/2007 through Houston, Texas."  (Id.)  Therefore, he was determined to be "removable as an alien who ha[d] illegally reentered the United States after having been previously removed or deported voluntarily while under an order of exclusion, deportation or removal and [was] therefore

subject to removal by reinstatement of the previous order." (Ex. S, Form I-871 (Notice of Intent/Decision to Reinstate Prior Order), ECF No. 21-21.)   On April 11, 2007, Defendant was notified that the Attorney General intended to reinstate the March 26, 2007 Removal Order and that he would be removed pursuant to the reinstated order; in Spanish, he was informed of the basis for the determination made against him and his right to contest that determination. (See id.) However, rather than being allowed to return to Mexico voluntarily, Defendant was detained pending criminal prosecution.

On April 12, 2007, a criminal complaint charging Defendant with illegal reentry in violation of 8 U.S.C. § 1326(a) was filed in the United States District Court for the District of New Mexico (hereafter, the "NM Case"). (See Ex. G-D, ECF No. 32, p.4.) The next day, April 13, 2007, Defendant made his initial appeared before the magistrate judge; during said appearance: Defendant was represented by a Federal Defenders attorney;[2] an

_____

[2] Defendant's attorney of record in the NM Case was Federal Public Defender Darcey Blue Riley, who was appointed on April 13, 2007. (See Ex. G-M, ECF No. 32, pp. 16-18 (docket sheet for NM Case (United States v. Carmona-Gonzalez, No. 2:07-CR-0815 (RB) (D.N.M. (Las Cruces) 2007)), listing Attorney Riley as Defendant's "LEAD ATTORNEY"); see also id. at NM Case ECF No. 3 (order appointment of Attorney Riley).) No other attorney is listed as representing Defendant in the NM Case. Pursuant to the Minute Entry for the April 13, 2007 Initial Hearing in the NM Case, Attorney Michelle Engent is identified as "STANDING IN", presumably for Attorney Riley. (See Ex. G-E, ECF No. 32, p.5.)

interpreter was used; Defendant was advised of the potential penalties he faced and his constitutional rights; and, the Court granted the Government's oral motion seeking Defendant's detention, having found Defendant to be a flight risk. (See G-E.) Thereafter, on April 18, 2007, a preliminary hearing in the NM Case was held before the magistrate judge, during which Defendant was represented by appointed counsel, an interpreter was used, and Defendant was again advised of his constitutional rights. (See Ex. G-F, ECF No. 32, p.6.) During the preliminary hearing, Defendant waived his right to a grand jury presentment of his case and, through counsel, requested an expedited felony plea be set. (See id.)

On May 1, 2007, Defendant made a third appearance in the NM Case – a plea proceedings – during which he was represented by counsel and an interpreter was used. (See Ex. G-G, ECF No. 32, p.7.) At that appearance, Defendant (1) signed a written waiver of indictment (see id.; see also Ex. G-H, ECF No. 32, p. 9 (Waiver of Indictment)), and (2) consented to proceed (a) by prosecution by information and not indictment, and (b) before the magistrate judge in entering a guilty plea (see Ex. G-G; see also Ex. G-H; Ex. G-J (Consent to Magistrate Judge), ECF No. 32, p.11.) Thereafter, Defendant pled guilty to illegal reentry into the United States, pursuant to 8 U.S.C. § 1326(a). During the plea proceeding, among other things, the magistrate judge: advised

Defendant of his rights; inquired whether Defendant had time to consult with his attorney and was satisfied with her representation; found Defendant fully understood the charges against him and the consequences of his guilty plea; accepted Defendant's factual allocution to the illegal reentry charge in the Information; found Defendant's plea was freely, voluntarily, and intelligently made; adjudged Defendant guilty of the crime charged; and, ordered an expedited presentence report be prepared. (See Ex. G-G.)

On June 7, 2007, Defendant appeared with counsel before a district judge to be sentenced in the NM Case, and at which an interpreter was used. (See Ex. G-K (Sentencing Minute Sheet), ECF No. 32, p.12.) The district judge accepted Defendant's guilty plea, adopted the Probation Department's findings in its presentencing report, and sentenced Defendant to imprisonment of "59 days or time served, whichever is less." (See id.; see also Ex. G-L (Criminal Judgment), ECF No. 32, p.14.) Thereafter, upon a Warrant of Removal, Defendant was removed from the Country on June 7, 2007 at the PDN Port of Entry in El Paso, Texas, via foot. (See Ex. G-N, ECF No. 32, pp.19-20.)

On September 14, 2019, Defendant was arrested in Southampton, New York and charged with Criminal Obstruction of Breathing or Blood Circulation, a Class A Misdemeanor under New York Penal Law. On November 5, 2019, a complaint and arrest

warrant for the Defendant, who was charged with illegal reentry pursuant to 8 U.S.C. §326(a) and (b)(1), was signed by Magistrate Judge Locke.  (See Case Docket, ECF Nos. 1 & 2.)  Defendant was arrested the next day, November 6, 2019, and made his initial appearance on the complaint in front of Magistrate Judge Locke on November 7, 2019.  (See id., ECF No. 3 (Minute Entry of Arraignment and Initial Appearance).)  He was detained until November 8, 2019, when he was released on bond.  (See id., ECF Nos. 4, 6 & 7.)  On November 13, 2019, the defendant was indicted in the present case. (See id., ECF No. 11.)  On February 20, 2020, Defendant moved to dismiss the Indictment by collaterally attacking his prior expedited removal from the Country.  (See Dismissal Motion, ECF No. 21; see also Supp. Memo., ECF No. 21-1.)


## DISCUSSION

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001)(citation omitted); see also United States v. Sammy, 763 F. App'x 45, 46 (2d Cir. Feb. 27, 2019)(quoting De La Pava).  "For the Government to prove a defendant guilty of illegal reentry after deportation, it must prove that the defendant has previously been deported, among other elements." United States v. Espinoza, 442 F. Supp. 3d 596, 603

11

(S.D.N.Y. 2020)(citing 8 U.S.C. § 1326(a)(1)-(2)). However, "an illegal reentry prosecution cannot rest upon a prior deportation order that was obtained in violation of the noncitizen's rights and without a meaningful opportunity for redress or judicial review." Id. (citing United States v. Mendoza-Lopez, 481 U.S. 828, 839 (1987)). Rather, "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." Mendoza-Lopez, 481 U.S. at 839; see also id. at 837-38 ("[W]here a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." (emphasis in original)).

In order to collaterally challenge a deportation upon which an illegal reentry charge is based, a defendant must establish:

> (1)  [he has] exhausted any administrative remedies that may have been available to seek relief against the order;
> (2)  the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and
> (3)  the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (hereafter, the "§ 1326(d) Test"); see also United States v. Lopez, 445 F.3d 90, 94 (2d Cir. 2006)(instructing that a challenging defendant must establish the three criteria of the § 1326(d) Test).  The parties agree that where, as here, a defendant is challenging a removal order procured by means of an expedited removal proceeding and which removal order is reinstated, judicial review of such an order is foreclosed by statute; therefore, it is unnecessary to examine the first and second prongs of the § 1326(d) Test.  (See Supp. Memo. at 8-9; Opp'n at 9.)

        To establish the third prong of the § 1326(d) Test, i.e., establishing fundamental unfairness, "a defendant 'must show both a fundamental procedural error and prejudice resulting from that error.'" Espinoza, 442 F. Supp. 3d at 603 (quoting United States v. Fernandez-Antonia, 278 F.3d 150, 159 (2d Cir. 2002); further citations omitted); see also United States v. Daley, 702 F.3d 96, 101 (2d Cir. 2012)("Fundamental unfairness arises when a 'fundamental procedural error' is coupled with 'prejudice resulting from that error.'" (quoting United States v. Copeland, 376 F.3d 61, 70 (2d Cir. 2004))), cf. United States v. El Shami, 434 F.3d 659, 664 (4th Cir. 2005) (instructing that to establish the fundamental unfairness prong of the § 1326(d) Test, a defendant is required to show both that one's "due process rights were violated by defects in [the] underlying deportation proceeding"

13

and that one "suffered prejudice as a result of the defects"). "The alien bears the burden of showing that entry of the removal order was fundamentally unfair." Daley, 702 F.3d at 100. Further, the prejudice component of the fundamental unfairness prong "is shown where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." Copeland, 376 F.3d at 73. Satisfying the prejudice component "is akin to that used for ineffective assistance of counsel claims, requiring a 'reasonable probability that but for [the] errors, the result of the proceeding would have been different.'" Espinoza, 442 F. Supp. 3d at 603 (quoting Copeland, 376 F.3d at 73; further citations omitted). The Second Circuit has instructed "that 'a reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Lopez, 445 F.3d at 100 (quoting United States v. Scott, 394 F.3d 111, 118 (2d Cir. 2005)(relying upon the Strickland ineffective-assistance-of-counsel test)).

I.   Fundamental Procedural Error

To the extent the Defendant argues a fundamental procedural error because CBP officers did not inform him that he could request to withdraw his application for admission, that argument is unavailing since "[n]o statue or regulation affords {Defendant] this supposed right.[3]   In fact, the applicable

---

[3]   Notwithstanding his argument to the contrary, it appears Defendant understands this, since he states:  "The law is clear

regulations explain that 'nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission.'"  Espinoza, 442 F. Supp. 3d at 606 (quoting 8 C.F.R. § 1235.4).  Analogous to the instant case, defendant Espinoza "move[d] to dismiss the indictment against him [arguing] his prior removal [via expedited removal proceedings] was fundamentally unfair" and, inter alia, "that he had a right to be informed of his ability to request discretionary relief from removal." Id. at 598.  The court denied the motion.  See id. at 611.  In doing so, it distinguished United States v. Copeland, 376 F.3d 61 (2d Cir. 2004), a case relied upon by Espinoza which "addressed a form of discretionary relief then available under section 212(c) of the Immigration and Nationality Act," but which was distinguishable from Espinoza's case since, in his case, "there was no 'well established and mandatory' right for Mr. Espinoza to be informed about his right to request discretionary relief." Id. at 607.  Instead, the Espinoza court relied primarily upon the rationale of United States v. Sanchez-Aguilar, 719 F.3d 1108 (9th Cir. 2013), a case where the "defendant's 'removal order was the product of an expedited removal proceeding authorized under 8 U.S.C. § 1225(b)(1),'" like Espinoza's -- and Defendant's -- case.

---

that aliens who seek entry at the border 'are entitled only to whatever process Congress provides.'" (Supp. Memo. at 19 (quoting United States v. Sanchez-Aguilar, 719 F.3d 1108, 1112 (9th Cir 2013)(citation and internal quotation marks omitted)).

_Id._ at 608 (quoting _Sanchez-Aguilar_, 719 F.3d at 1111). Following _Sanchez-Aguilar_'s holding, the _Espinoza_ court rejected Espinoza's argument that he was entitled to be informed of the ability to request a withdrawal of an application for admission as neither 8 U.S.C. § 1225(b)(1) nor the corresponding regulation, 8 C.F.R. § 235.3, bestowed such a right; therefore, "the immigration officer's failure to inform [the defendant] of his ability to request withdrawal of his application for admission did not violate his due process rights." _Id._ (quoting _Sanchez-Aguilar_; brackets in _Espinoza_). _Cf._ _United States v. Meraz-Olivera_, 472 F. App'x 610, 612 (9th Cir. 2012) (holding that in an expedited removal proceeding "[n]either the statute, nor the regulations, require that an immigration officer advise the alien of his opportunity to request withdrawal of his application for admission"). Hence, "the failure to inform [Espinoza] of this possibility was not a fundamental procedural error" and "failed to show that his prior removal order was fundamentally unfair." _Espinoza_, 442 F. Supp. 3d at 611.

The Court finds the instant case strikingly analogous to _Espinoza_. Thus, for the same reasons that the facts in _Copeland_ are distinguishable from those presented in _Espinoza_, they are, likewise, distinguishable from the facts presented in the instant case, making Defendant's reliance upon _Copeland_ misplaced. Further, similar to the defendants in _Sanchez-Aguilar_ and

16

<u>Espinoza</u>, since Defendant did not have a right to be informed of a potentially available avenue of relief from removal in his expedited removal proceeding, the failure to provide such information does not establish a fundamental procedural error warranting dismissal of the Indictment.

Defendant also contends he suffered other fundamental procedural errors, <u>e.g.</u>, the failure by the immigration officers to read Defendant "the information contained in Form I-867A, the Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act" (Supp. Memo. at 19 (citing Ex. A, ¶¶38, 45)); he did not sign the reverse side of Form I-860, the Notice and Order of Expedited Removal, acknowledging receipt of said Notice and Order (<u>see</u> <u>id.</u> at 21 (citing Ex. A, ¶43)); and, various alleged ministerial "errors in the [G]overnment's documents relating to his expedited removal and reinstatement of removal." (<u>Id.</u> (citing Ex. A, ¶¶39, 45).)  The Court is unpersuaded that these alleged procedural errors are fundamental such that they warrant dismissing the Indictment.  They have been "created <u>post</u> <u>hoc</u> by affidavit", <u>Espinoza</u>, 442 F. Supp. 3d at 610 n.10, and, as aptly argued by the Government, "are contradicted by the contemporaneous records prepared by the immigration officials in 2007 and bolstered by the presumption of regularity in administrative proceedings." (Opp'n at 9-10 (citations omitted).)

Moreover, there is case law precedent that alleged errors, such as those alleged by Defendant, do not constitute due process violations.  For example, in <u>United States v. Sanchez-Lopez</u>, the court found no denial of due process to the defendant in his underlying expedited removal proceeding where the defendant argued he failed to sign the back of the Form I-860, the Notice and Order of Expedited Removal, and that said form, which demonstrated that the defendant was apprised of its substance, was in English, not Spanish.  414 F. Supp. 3d 842, 845 (E.D. Va. 2019).  Rather, the <u>Sanchez-Lopez</u> Court found that, since there was evidence that the immigration officer conversed with defendant in Spanish during the proceeding and that this conversation, as a whole, "covered the entire substance of what was on Form I-860, and made clear to the [d]efendant that it was his opportunity to participate in the proceedings against him," these errors did not constitute due process violations.  <u>Id.</u> at 846; <u>see also</u> <u>id.</u> at 845 (noting the execution of the Form I-860 Certificate of Service by the immigration officer and the contents of Form I-867A, the Record of Sworn Statement, in rejecting defendant's claim of alleged fundamental procedural error).

The present case is similar.  As to the March 26 Reentry,[4] among other things, the evidence establishes that, under oath, Defendant was interviewed in Spanish and that as a result of that interview was determined to be inadmissible to the United States, questioned whether he feared returning to Mexico, and asked whether he wanted to contact the Mexican Consulate.  (See Ex. B, Form I-275, Withdrawal of Application for Admission ("Officer Garcia was requested to translate.  Officer Garcia then read the JURAT in the Spanish Language.  Subject again [stated] that he understood the JURAT and was willing to answer questions.  Subject was again placed under oath and sworn statement was taken.  All questions were asked in the Spanish Language."); Ex. C, Form I-867A, Record of Sworn Statement (stating Defendant did not wish to contact Mexican Consulate; last page initialed by Defendant); Ex. D, Form I-867B, Jurat for Sworn Statement (Defendant attesting to having no fear of returning to Mexico; signed by Defendant); Ex. E, Record of Sworn Statements (Jurat) in Spanish (signed by Defendant).) Thus, "the record before this [C]ourt, . . . shows that the Defendant was apprised of the substance of Form I-860." Sanchez-Lopez, 414 F. Supp. 3d at 845.  But,

> even if Form I-860 did not actually apprise
> the Defendant of the charges against him, the
> rest of the proceedings did.  Form I-867A

---

[4] "The relevant removal in the instant case is the March 26, 2007 expedited removal, and the alleged reinstatement of that order." (Reply at 12.)

> record[ed] the conversation that [an]
> immigration officer had, in Spanish, with the
> Defendant. [(See Ex. C.)] [It] shows that
> the Defendant was informed that he did 'not
> appear to be admissible or to have the
> required legal papers authorizing [his]
> admission into the United States,' that he may
> be 'denied admission [into the United States]
> . . . immediately removed from this country,
> and . . . barred from reentry for a period of
> 5 years or longer,' and that the hearing would
> be his only opportunity to present information
> before the immigration officer made a
> decision. Id. The record further shows that
> the Defendant acknowledged he was a citizen of
> [Mexico] and not of the United States. Id.
> This conversation thus covered the entire
> substance of what was on Form I-860, and made
> clear to the Defendant that it was his
> opportunity to participate in the proceedings
> against him.

Id. at 845-46. Moreover, Defendant's self-serving, ambivalent

statement that he "do[es not] remember receiving a copy of [Form

I-860] or signing the back of that document" although "it is

possible that officers gave me a copy of the document before they

deported me" (Ex. A, Def.'s Aff.,¶43), is insufficient to meet his

burden of establishing fundamental procedural error. [5] See, e.g.,

---

[5] In declining to decide whether defendant's alleged violations
amounted to fundamental procedural error, the court in Espinoza
noted:

> [Defendant] has submitted an affidavit in
> support of his motion. Several of the
> statements contained in [Defendant]'s
> affidavit contradict his own prior sworn
> statements. . . . The Court makes no finding
> regarding the truthfulness of [Defendant]'s
> sworn statements in his affidavit, and does
> not take a position regarding whether the

United States  v. Barajas-Alvarado, 655 F.3d 1077, 1088 n.12 (9th Cir. 2011) ("Because the record is silent as to whether [defendant] signed the back of the Form I-860 or was otherwise informed of the charges against him, [he] did not carry his burden of proof on this claim and cannot establish the existence of a due process violation or prejudice."). Similarly unavailing are the other ministerial errors Defendant identifies as fundamental procedural errors.

---

> documents that he signed at the time of his initial removal from the United States are entitled to a presumption of regularity, as the Government argues.  But it bears emphasis it would be a substantial burden on the [C]ourt's and the parties' resources to require an evidentiary hearing whenever a[] factual issue regarding the deportation process is identified by a defendant alien (or, as here, is created post hoc by affidavit)—regardless of whether the issue was material, and whether it related to an error that plausibly prejudiced him.  This case underscores the need for the reviewing court to scrutinize whether a defendant has shown a causal link between any asserted errors in his prior immigration proceeding and the prejudice that he allegedly suffered.

Espinoza, 442 F.Supp.3d at 610 n.10.  This Court concurs and, given the close resemblance between Espinoza and the instant case, finds no need for an evidentiary hearing on the Dismissal Motion since, as will be discussed infra, Defendant cannot "demonstrate that the prejudice he claims resulted from the fundamental procedural errors he alleges." Id. at 610.

II.  Resulting Prejudice

However, "[e]ven assuming that these alleged violations occurred and that they amount to fundamental procedural error . . . , [Defendant] cannot demonstrate that the prejudice he allegedly suffered—his inability to request discretionary relief from removal—resulted from the violations." Espinoza, 442 F. Supp. 3d at 610; see also Fernandez-Antonia, 278 F.3d at 159 ("[W]e hold that in order for an alien to demonstrate on collateral review that his hearing was so fundamentally unfair that it constituted a denial of . . . due process, he must show both a fundamental procedural error and prejudice resulting from that error." (emphasis added)); Sanchez-Lopez, 414 F. Supp. 3d at 846 ("Even assuming that the [alleged procedural] errors constituted due process violations, these errors were not causally linked to the prejudice the Defendant claims. Nothing in Form I-860 refers to the possibility of discretionary relief from removal, or an alien's ability to request it. Therefore, the alleged prejudice did not occur 'as a result of the defects.'" (citing El Shami, 434 F.3d at 664)); Terrazas Siles, 397 F. Supp. 3d at 823 (finding no prejudice where there was a "fundamental disconnect between the defects defendant identified" in her expedited removal proceeding "and the harm she claims to have suffered" since "[n]one of the immigration forms that defendant claims were not translated for, or provided to, her contains any advisement about withdrawing an application

22

for admission or the effect of departing the country without a formal removal order").

Here, as in Espinoza, the Defendant "claims prejudice because he was unaware of his ability to request discretionary relief removal, that if he had been aware of his ability to make such a request, he would have done so, and it is reasonably probable that he would have been granted such relief." Espinoza, 442 F. Supp. 2d at 610-11. (See also Supp. Memo. at 23 (asserting Defendant suffered prejudice because officers did not advise him of "a form of relief known as withdrawal of admission"); Ex. A, ¶¶41-42 ("The officer never told me that there was any option for me to leave without getting a deportation. If he had told me about this, of course I would have asked for that option.").) But, as the Espinoza court found, "None of the procedural errors alleged by [Defendant] is causally connected to the prejudice he alleges." Id. at 611.

Even assuming, arguendo, that Form I-860 was not signed by Defendant, that various required documents were not read to or translated for Defendant during the expedited removal proceedings on March 26,2007, there were various ministerial anomalies in the immigration documents, and even assuming these alleged shortcomings evidenced fundamental procedural errors, Defendant is, nonetheless, unable to demonstrate the requisite prejudice necessary to collaterally attack the Indictment for the simple

reason that none of those alleged errors referred to, or in any manner implicated, "the possibility of discretionary relief from removal, or an alien's ability to request it," which is the prejudice Defendant asserts. Sanchez-Lopez, 414 F. Supp. 3d at 846. Rather, "[a]t bottom, even assuming that [D]efendant's expedited removal proceeding[s] w[ere] defective, the defects alleged are divorced from any injury," Terrezas Siles, 397 F. Supp. 3d at 823, since there is no requirement for immigration officials to inform an "alien of his opportunity to request withdrawal of his application for admission." Meraz-Olivera, 472 F. App'x at 612.

Nor is the Court convinced that, but for the defects alleged, it is reasonably probable[6] that Defendant would have been granted the ability to withdraw his application for admission had the officers correctly considered his eligibility. (See Reply at 7.[7]) Defendant's position is undermined by the March 26, 2007

---

[6] The Defendant encourages the Court to adopt the Ninth Circuit's "standard of proof applicable to a [d]efendant seeking to collaterally attack an expedited removal order" (Reply at 6), i.e., that "[a] defendant need not conclusively demonstrate that he or she would have received relief to show prejudice, but must show only that there were plausible grounds for relief." United States v. Ramos, 623 F.3d 672, 684 (9th Cir. 2010). The Court declines to do so.

[7] In claiming he suffered prejudice, Defendant puts forth statistical evidence that, in 2007, approximately thirty-five percent (35%) of aliens applying for admission at the Houston International Airport were permitted to withdraw their applications. (See Reply at 9 (citing to Exs. AA-CC, ECF Nos. 34-

"Discretionary Authority Checklist for Alien Applicants" (hereafter, the "Checklist")(Ex. H, ECF No. 21-10), which demonstrates the CBP officer "considered the six nonexclusive factors outlined in the inspector's field manual . . . , [which are] relevant when considering whether to grant an alien the ability to withdraw [his] application for admissions." (Reply at 7 and note 4; see also id. at 10 ("In deciding upon granting an alien the ability to withdraw their [sic] application for admission, the Field Manual instructs officers to consider 'all facts and circumstances related to the case' and to engage in 'a careful balancing of relevant favorable and unfavorable factors in order to reach an equitable decision.'" (quoting United States v. Arizmendi-Depaz, No. 18-CR-4949, 2019 WL 3945459, *5 (S.D. Cal. Aug. 21, 2019)(citing INS Field Manual § 17.2(a)))). Upon the CBP officer's consideration of those multiple factors, which make up the Checklist, discretionary authority to permit Defendant to withdraw his application was not given.

Specifically, in response to the first question on the Checklist, i.e., whether "the alien pose[s] a threat to the United States," "Yes" was marked off for the response "Likely to Contribute to Illegal Population." Below that question (and the

---

1 through 34-3).) Defendant contends that there was a reasonable probability that he "could have been granted the ability to withdraw his application for admission." (Id. at 6-7 (emphasis added).)

second question regarding verification of identity and nationality), the Checklist included the instruction: "**NOTE: Discretionary authority should not normally be exercised if the answer is yes to any of the categories listed under question 1 and/or the identity of the applicant or [nationality] of that applicants cannot be establish[ed]." (Id. (emphasis in original).) In the accompanying "Remarks" section, the examining CBP officer stated: "Subject admitted to having worked on his last entry doing construction and landscaping. He has also admitted that he had been working illegally in the United States since 2002." (Id. (re: "Remarks" section for Questions 1 & 2).) In the next Checklist question, "Criminal in Nature" was the box marked in response to the inquiry about the "Nature of Inadmissibility" with the corresponding "Remarks" stating "Subject is inadmissible pursuant to 212(a)(7)(A)(ii)(I) of the INA[.] Subject has one DWI in New York in 2003." (Id. (re: Question 3).) An affirmative answer of "Previous Violations" was provided to the Checklist inquiry of "Previous Immigration Violations or Inadmissibility," with the further explanation that "Subject admitted to living and working illegally in the U.S. since 2002." (Id. (re: Question 5).) No health or age issues were flagged, but as to the Checklist inquiry about "Other Factors for Consideration", among other things, it indicates Defendant: did not "have a legitimate reason for entering the U.S."; made misrepresentations during the

26

inspection process; had no "relationship to a U.S. employer or resident"; and, would not "be admissible if s/he had a valid passport and/or visa". (Id. (re: Questions 7 & 8).)  The "Remarks" following the "Other Factors" question stated:  "Subject admitted to having worked on his last entry doing construction and landscaping.  He also admitted that he had been working illegally in the United States since 2002." (Id. (re: "Remarks" section for Question 8).)

Consideration of the responses and remarks in the Checklist, in conjunction with the other documents generated during the March 26 Reentry proceeding, as well as the statistical data proffered by Defendant (see supra note 7), does not undermine the Court's confidence in the resulting outcome in this instance, i.e., that Defendant was determined not to be eligible to seek discretionary withdrawal of his application for admission.  See Lopez, 445 F.3d at 100 (instructing that a reasonable probability is a probability sufficient to undermine confidence in the outcome).  In sum, since Defendant cannot couple his allegations of fundamental procedural error with the prejudice he claims, he is unable to satisfy the fundamental unfairness prong of the § 1326(d) Test.  See Daley, 702 F.3d at 101; see also United States v. Lopez-Collazo, 824 F.3d 453, 462 (4th Cir. 2016) (instructing "the defendant must link the actual prejudice he claims to have

suffered to the specific due process violation at issue" (citing Fernandez-Antonia, 278 F.3d at 159).


***

To the extend not explicitly addressed herein, the Court has considered the remainder of Defendant's arguments and finds them to be without merit.  Upon the record presented, Defendant is unable to meet his burden of collaterally attacking the Indictment.


CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Dismissal Motion is DENIED.  The Court shall hold a telephonic Status Conference at 12:00 noon on April 20, 2021.  The parties are to call the Court's conference number: (877) 336-1839; the access code is 7231185.


**SO ORDERED.**

_/s/ JOANNA SEYBERT_____
JOANNA SEYBERT, U.S.D.J.

Dated:     April 5, 2021
           Central Islip, New York